UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROSEMARY LOVE, *et al.*,               :
                                       :
           Plaintiffs,                 :
                                       :
     v.                                : Civil Action No. 00-2502 (JR)
                                       :
ANN VENEMAN, Secretary, U.S.           :
Department of Agriculture,             :
                                       :
           Defendant.                  :

**MEMORANDUM ORDER DENYING CLASS CERTIFICATION**

In this suit, Rosemary Love and a number of other named plaintiffs, all women farmers, complain of gender discrimination on the part of the United States Department of Agriculture over the past 23 years. They allege that, from January 1, 1981 until December 31, 1996, and again from October 1998 until the present,[1] they were refused USDA farm loans, loan servicing and loan continuation, and even refused farm loan application forms, because they were women. The plaintiffs seek to represent a class of women similarly situated, and they have moved for certification of two of the three subclasses defined in their third amended complaint.

This is one of three companion cases filed after the settlement of Pigford v. Veneman, 1:97-cv-01978-PLF (D.D.C.), the

---

[1] The 21-month gap has to do with a statute of limitations question that is not germane to the motion now before the Court.

Black farmers case. The other two, Keepseagle v. Veneman, 1:99-cv-03119-EGS (D.D.C.), and Garcia v. Veneman, 1:00-cv-02445-JR (D.D.C.), were filed on behalf of Native American and Hispanic farmers, respectively. Judges Friedman and Sullivan granted class certification motions in Pigford and Keepseagle, after finding that USDA had acted or refused to act upon grounds generally applicable to the plaintiff classes in those cases, in part because, for nearly twelve years during the Reagan and first Bush administrations, the Civil Rights Office within USDA was virtually shut down and farmers' claims of discrimination were not investigated or simply ignored. In Garcia and Love, however, I ruled that plaintiffs' allegations of failure to investigate civil rights complaints did not state a claim under the Equal Credit Opportunity Act or the Administrative Procedure Act. That ruling, which has now been appealed,[2] effectively means that plaintiffs in Garcia and Love must seek to satisfy Rule 23(a)'s commonality requirement in some other way.

It should be noted at the outset that the numerosity and adequacy of representation requirements of Fed. R. Civ. P. 23(a) are not at issue here. They are virtually conceded by the government, and, if they have not been, I find that the putative

---

[2] My order of September 10, 2004, in Garcia invited the plaintiffs to seek certification of that question for an interlocutory appeal under 28 U.S.C. 1292(b). They have now done so.

plaintiff class is so numerous that joinder of all members is impracticable and that the representative parties will fairly and adequately protect the interests of the class. Plaintiffs' problem lies with the second and third requirements of Rule 23(a), that there be "questions of law or fact common to the class, [and] that claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Those two requirements are analytically different from one another, see Bynum v. District of Columbia, 214 F.R.D. 27, 34 (D.D.C. 2003)(commonality refers to the claims of members of the class, while typicality focuses on whether class representatives assert the claims that are common), but they are usually treated together, and there is no reason to separate them in this case.

  Plaintiffs' third amended complaint identifies three sub-classes of women farmers -- those who were denied loan applications because of their gender, those who applied for loans but never received them because of their gender, and those who obtained at least one farm loan but experienced delays or difficulty in obtaining loan servicing because of their gender. The present motion seeks certification only of the first two. The questions presented by the motion and the government's opposition are these: Have plaintiffs met the prerequisite commonality (and typicality) requirements of Rule 23(a)? If so, have they satisfied either or both of the requirements of Rules

23(b)(2) and 23(b)(3), that USDA has acted in a manner "generally applicable to the class, consequently making entry of declaratory or injunctive relief appropriate" and that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members"?  Because I find here, as I have twice found in the Garcia case, 211 F.R.D. 15 (Garcia I), and Order of September 10, 2004 (Garcia II), that all of these questions must be answered in the negative, the motion for class certification will be denied.

      1.  Rule 23(a) commonality  Plaintiffs have assembled an impressive collection of sworn statements asserting that a great many women have been flatly refused farm loans and even loan application forms in some of USDA's some 2700 county offices over the last 22 years.  They concede that these declarations are anecdotal but assert that they are "typical and representative of a national problem," Plaintiff's Memorandum in Support of the Motion for Class Certification (Pltfs' Memo) at 9.  Plaintiffs also offer a statistical argument that "women farm operators have received fewer numbers of loans and less loan dollars than they should have received," id. at 11.

      In this case, as in the Garcia case, the parties have struggled with the Supreme Court's decision in General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147 (1982), and particularly with the Court's dictum, 457 U.S. at 159 n.15, that

commonality might "conceivably" be established by "significant proof" that the defendant

> "[o]perated under a general policy of discrimination . . . if the discrimination manifested itself in . . . practices in the same general fashion, such as through entirely subjective decisionmaking processes."

Falcon, of course, is not exactly on point.  It involved an "across the board" claim of discrimination (one employee seeking to represent the discrimination claims of all), and the Court was particularly concerned about the class plaintiff's claim to represent both employees and applicants.  Falcon was applied and explained, however, in Hartman v. Duffey, 19 F.3d 1459, 1472 (D.C. Cir. 1994), a case much closer to home:

> As Falcon made clear, there is more to a showing of commonality than a demonstration that class plaintiffs suffered discrimination on the basis of membership in a particular group. . . .  While in a case alleging intentional discrimination, such as this one, a plaintiff need not isolate the particular practice and prove that such practice *caused* the discrimination, plaintiffs must make a significant showing to permit the court to infer that members of the class suffered from a common policy of discrimination that pervaded all of the employer's challenged employment decisions.

In my initial denials of class certification in this case and in Garcia, I focused on the geographic and organizational dispersal of the decision makers at USDA who denied farm loans or refused application forms and on the question of whether USDA's criteria for making loans to farmers were "entirely subjective."  Now pressing their arguments on those points, the plaintiffs urge

that the "entirely subjective" language must not be interpreted inflexibly and that "decentralized decision making should not be and is not a *per se* bar to a finding of commonality," Pltfs' Memo at 29.  They are correct, it seems to me, on both counts.  Each factor, the geographic and organizational dispersal of decision makers, and the degree of subjectivity in the decision making criteria, describes a spectrum.

The record of this case, however, describes a fact pattern further from the "entirely subjective" end of the subjectivity spectrum, and closer to the "completely scattered" end of the geographic dispersal spectrum, than plaintiffs would have it.  The declarations submitted by the plaintiffs might have been sufficient to support certification of subclasses of women who suffered discrimination at the hands of particular county committees or extension office officials, such as in Coffee County and Douglas County, Georgia, Jefferson Davis County, Mississippi, and Jefferson County, Arkansas, see Memorandum of Points and Authorities in Opposition to Class Certification Motion (Deft Memo) at 17 n.13.  But they do not amount to the "significant showing" required by Hartman, supra, that would "permit the Court to infer that members of the class suffered from a common policy of discrimination that pervaded all of the . . . challenged . . . decisions" nationwide, as the government correctly points out, citing a string of cases to

support the proposition that "[t]he clear weight of authority examining decentralized decision making acknowledges that it 'cuts against any inference for class action commonality.' Stastny v. Southern Bell Co., 628 F.2d 267, 279 (4th Cir. 1980)." Deft Memo at 8.

As for subjectivity, although plaintiffs are certainly correct that the criteria set forth in USDA's regulations for making farm loans during the years in question were subjective in many of their parts, the existence of non-subjective criteria cuts against the inference that there was a "common policy of discrimination that pervaded all of the . . . challenged . . . decisions." Hartman 19 F.3d at 1472.[3]  A number of the reasons given to plaintiffs' declarants for the disapproval of their loans -- failure to meet collateral requirements, poor credit, insufficient income, see Deft Memo at 12-13, nn.8-10 -- register more nearly at the "objective" end of the subjectivity spectrum.

Nor do the cases upon which plaintiffs rely provide as much support as plaintiffs suggest.  The first one, Cook v. Billington, No. 82-0400, 1992 WL 276936, at *4-5 (D.D.C. Aug. 14, 1991), is not a class action case.  Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291-92 (2d. Cir. 1999) (a decision annotated with an impressive list of "disagreed with," "declined

---

[3]  The "subjectivity quotient" of USDA's decision-making process is discussed in Garcia II, supra, at 12-19, and need not be repeated here.

to follow" and "distinguished" citations) involved a single employer and a district judge who apparently thought that the employer's policy of delegating discretionary authority to supervisors precluded a finding of commonality and typicality. Buycks-Roberson v. Citibank Fed.. Sav. Bank, 162 F.R.D. 322, 330, 331 (N.D. Ill.) (alleging "redlining" in the granting or denial of home mortgage loans) is analytically quite similar to the present case, but the judge in that case granted class certification only for injunctive relief under Rule 23(b)(2), a ruling that our Court of Appeals has found to be at least problematical, see infra. In Shores v. Publix Super Mkts., Inc., No. 95-1162-CIV-T-25(E), 1996 WL 407850, at *4 (M.D. Fla. Mar. 12, 1996), Arnett v. Am. Nat'l Red Cross, 78 F.R.D. 73, 76 (D.D.C. 1978) (a pre-Falcon decision), Hyman v. First Union Corp., 982 F.Supp. 1, 5-7 (D.D.C. 1997), and Thomas v. Christopher, 169 F.R.D. 224, 237-38 (D.D.C. 1996), allegations of centralized employment practices provided the necessary commonality. Perhaps the best language for plaintiffs' view of the commonality issue is found in Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003), but plaintiffs have misstated the posture of the case, which is very important to understanding the holding: it was not Boeing that objected to class certification, but a group of class members dissatisfied with a class action settlement that Boeing had an interest in preserving. The Ninth

Circuit upheld the commonality determination, but it rejected the settlement.  (Thomas v. Christopher, supra, was also a settlement.)

It is true, as plaintiffs' assert, that the combination of "excessive (albeit not entirely) subjective decision making, coupled with evidence tending to show that the process results in a pattern and practice of discrimination, will provide the basis for finding of commonality," Pltf Memo at 27-28.  The statistical showing plaintiffs have offered, however, does not significantly change the anecdotal nature of the facts recited in the declarations.  The fact that "women comprised approximately 6.9 percent of the farm operators but received only 3.2 percent of the credit lent," Pltf Memo at 2 (see expert report of Patrick M. O'Brien (Jan. 12, 2004), at 6), has meaning only if we know how many women farmers and how many men farmers applied for loans, and we do not.

Defining putative subclasses as plaintiffs have in their third amended complaint -- "women who were denied applications to apply for farm loans on the basis of gender" and "women who actually applied for farm loans, but were denied them on the basis of gender" -- might seem to satisfy the requirement of the commonality cases as a matter of form, but it begs the precertification question of substance posed by the Hartman decision, namely, whether there has been a substantial showing

- 9 -

that would permit the inference that members of the class suffered from a <u>common policy of discrimination</u> that pervaded all of the challenged decisions.  In my view, there has not been such a showing.

    2. <u>Rule 23(b) requirements</u>  If Rule 23(a) commonality were the only issue to be resolved on this motion, the question of whether or not to certify plaintiffs' two sub-classes would be a considerably closer one.  But the Rule 23(a) factors are only prerequisites -- first steps in the certification analysis.  The requirements of Rule 23(b) are more exacting.

      a. <u>Rule 23(b)(2)</u>  Rule 23(b)(2) analysis requires a determination of whether the party opposing the class (USDA) has acted in a manner "generally applicable to the class, consequently making entry of declaratory or injunctive relief appropriate."  Plaintiffs say yes, simply asserting without analysis that "USDA's conduct -- through the county committees and other local county officials -- is 'generally applicable' to the entire class of women who were discriminated against in the distribution and review of farm loan applications . . . ."  Deft Memo at 43.  Now that plaintiffs have defined the class(es) they seek to represent as women who have been discriminated against that assertion becomes quite plausible.  Defendants' nevertheless insist that the answer is no: "P]laintiffs do not challenge a defined policy or clearly delineated practice adopted

by USDA all farm credit programs.  Rather, they challenge thousands of individual loan decisions made over two decades in approximately 2700 county offices by thousands of different USDA officials."  Deft Memo at 23.  Plaintiffs have the better of this argument.  They do assert that responsibility for those thousands of individual loan decisions (and decisions about whether or not to give loan application forms to women) lies centrally with USDA, because USDA abetted or failed to prevent the unlawful acts of local officials or county committees for 22 years, even if only by looking the other way.  Successfully arguing the general applicability of USDA's failure to act and the appropriateness of injunctive relief is only necessary for Rule 23(b)(2) certification, however.  It is not, by itself, sufficient.

It is universally held, although with differences from circuit to circuit, that Rule 23(b)(2) certification is inappropriate where claims for money damages predominate but permissible if the claim for money damages is "incidental" to the claim for equitable relief.  In this case, as in the <u>Garcia</u> case, <u>see</u> 211 F.R.D. at 22-23, money damages are far from incidental.  Plaintiffs acknowledge the problem, but they have not forsworn their claim for money damages.  Instead, they have proposed alternatives adopted in other cases: granting Rule 23(b)(2) certification for the liability phase of the case, leaving open the question of (b)(2) or (b)(3) certification to the remedy

- 11 -

phase, as Judge Sullivan did in <u>Keepseagle</u>, Deft Memo at 42-43; or granting "hybrid" certification provisionally now, (b)(2) for liability and (b)(3) for remedy, <u>id</u>. at 44, Deft Reply at 20.

The <u>Keepseagle</u> approach, certifying a plaintiff class only under Rule 23(b)(2) "without first determining if plaintiffs' claims for monetary relief predominate over their equitable claims," has been seriously questioned by a panel of the Court of Appeals, <u>see</u> <u>In re Veneman</u>, 309 F.3d 789, 795 (D.C. Cir. 2002). The idea of provisional "hybrid" certification is problematical as well and is implicitly called into question by <u>In re Veneman</u>'s focus on the potential due process issue that arises if a no-opt-out (b)(2) suit is settled and an absent member of the plaintiff class then seeks to bring her own individual action for damages. <u>Id.</u> at 796, and <u>see</u> <u>Ticor Title Ins. Co. v. Brown</u>, 511 U.S. 117 (1994).

Because of those concerns, and my own my very clear view of the (b)(3) "predominance" issue that must be dealt with sooner or later in this case, I see no point in (b)(2) certification, unless it would be to "create the sort of high-stakes situation that puts 'substantial pressure on the defendant to settle independent of the merits of the plaintiffs' claims,'" <u>In re Lorazepam & Clorazepate Antitrust Litig.</u>, 239 F.3d 98, 102 (D.C. Cir. 2002) (citing <u>Blair v. Equifax Check Services, Inc.</u>, 181 F.3d 832, 834 (7th Cir. 1999) -- and that, I decline to do.

If declaratory and injunctive relief were all that plaintiffs sought in this case, class certification would be unnecessary anyway.  The adjudication of a claim of gender-based refusals of loans or gender-based refusals to distribute loan application forms brought by one or more individual plaintiffs could yield the injunctive relief these plaintiffs have prayed for (not to mention attorneys' fees) without class certification: requiring USDA to adopt lending practices in conformity with the requirements of the Equal Credit Opportunity Act and the Administrative Procedure Act, prohibiting USDA from discriminatory lending practices, and mandating an effective system for investigating and timely responding to complaints of gender discrimination.  See Third Amended Complaint at 28-30; Deft Memo at 43.

        b.  <u>Rule 23(b)(3)</u>  "Rule 23(b)(3)'s predominance criterion is far more demanding than the commonality requirement of Rule 23(a)."  My discussion of that point in <u>Garcia I</u>, 211 F.R.D. 15 at 23-24, and <u>see</u> <u>Garcia II</u> at 21-23, applies in this case exactly as it did to <u>Garcia</u>.  Plaintiffs have adduced no evidence, and it is unlikely that they can do so, establishing that it is or ever was actually USDA policy to refuse to give loan application forms to women farmers, and so the adjudication of that claim will almost inevitably involve individual swearing contests.  As for loan denials, the plaintiffs themselves have

identified a number of different reasons given to women farmers, "ranging from alleged overt discrimination to failure to meet program qualifications regarding collateral, poor credit, or insufficient income." Deft Memo at 12-13 and nn. 7-9. To repeat an observation I made in Garcia II, at 22-23:

> "The history of the Pigford (Black farmers) class action litigation amply demonstrates that the certification of a plaintiff class to resolve decades of disputes about loans made or not made . . . to thousands of individual farmers, working under disparate conditions and submitting applications to hundreds of different decision-makers (to say nothing of loan applications offered or not offered . . .), would be only the beginning of a lengthy and difficult process in which, as it turns out, it is the 'questions affecting only individual members' that predominate."

It is not an improper peek into the merits, cf. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974), see Wagner v. Taylor, 836 F.2d 578, 587 (D.C.Cir. 1987), to review the procedural history of the Pigford case and to recall the record of Mavity v. Glickman, 1:00-cv-02518-JR (D.D.C.), and to conclude, as I have, that questions of fact common to members of the putative subclasses do not predominate over questions affecting only individual members in these USDA farm loan cases.

**CONCLUSION**

As in Garcia, I recognize that this order denying class certification, together with my earlier ruling that plaintiffs' claim of failure to investigate did not state a claim under the ECOA or the APA, fundamentally alters the posture of this case.

- 14 -

I will accordingly order proceedings in this court stayed so that plaintiffs may seek appellate review of the class certification question, see Fed. R. Civ. P. 23(f), and, if asked to do so, I will certify my order of December 13, 2001, for interlocutory appeal.

*   *   *   *   *

For the reasons set forth above it is **ORDERED** that plaintiffs' motion for class certification [54]is **denied.**  And it is **FURTHER ORDERED** that further proceedings in this case are **stayed** pending further order of the Court.


                                        JAMES ROBERTSON
                                  United States District Judge