**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ROSEMARY LOVE, *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | Civil Action No. 00-2502 (JR) |
| : | |
| CHARLES F. CONNOR, Acting : | |
| Secretary, U.S. Department of : | |
| Agriculture, : | |
| : | |
| Defendant. | |

**MEMORANDUM**

This case is here on remand from the Court of Appeals for "further development" of the merits of the plaintiffs' claims under the APA. Love v. Johanns, 439 F.3d 723, 732-33 (D.C. Cir. 2006); Garcia v. Johanns, 444 F.3d 625, 636-637 (D.C. Cir. 2006) (companion case). The facts have been stated elsewhere and will be summarized only briefly here.

Plaintiffs are women farmers who allege discrimination by USDA in the administration of its farm benefit programs, and who further complain that USDA utterly failed to process or investigate their discrimination complaints when they filed them with the agency many years ago. There is little dispute that USDA dismantled its civil rights investigation program between the early 1980's and the mid-1990's, and did so without informing farmers that their discrimination complaints would be either ignored or summarily denied. See generally USDA Civil Rights Action Team Report: Civil Rights at the U.S. Dept. of

Agriculture, [80, Exhibit 3]; 144 Cong. Rec. S11,433 (Sen. Robb). When Congress learned of this state of affairs, it extended for two years the period of limitations for any cause of action that a plaintiff might bring to redress claims she had filed with USDA in an "eligible complaint." See Pub. L. No. 105-277, 112 Stat. 2681-30, Title VII, Sec. 741 (codified at 7 U.S.C. § 2279 Note) (hereafter "§ 741"). Eligible complaints were defined as complaints filed with USDA between 1981 and 1996 that complained of violations of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 et seq., or of discrimination in the administration of a commodity assistance or disaster relief program. See § 741(e). Plaintiffs filed this action days before that extended period ran out. They seek relief both for USDA's alleged discrimination and for USDA's failure to investigate.

In earlier proceedings, I denied a motion to certify a plaintiff class alleging discrimination in violation of ECOA but found that some individual plaintiffs may have viable ECOA claims. I also dismissed plaintiffs' attempt to bring their failure to investigate claim under ECOA. The Court of Appeals affirmed these rulings. Love, 439 F.3d at 728-732 (D.C. Cir. 2006). What remains on this remand is the question whether plaintiffs' failure to investigate claim can be brought under the APA, and whether certain ancillary claims of discrimination in

the administration of non-credit benefits can proceed under the APA as well.

## Analysis

### A. The Regulatory Regime

The regulations that bear upon this case have changed over time.  In 1981, departmental regulations stated that persons could file discrimination complaints, that they would be handled "in accordance with the procedures established . . . for the handling of complaints or appeals . . . which are not based on discrimination," and that the "investigative function . . . shall be discharged by the Office of the Inspector General in the manner determined by the Inspector General."  See 31 Fed. Reg. 8175.  In 1985, this regulation was amended to replace the Office of the Inspector General with the Assistant Secretary for Administration, but the provision that the investigative function would be discharged "in the manner determined by the Assistant Secretary" was unchanged.  See 50 Fed. Reg. 25687.

In 1989, the provision that discrimination complaints would be processed in the same manner as other complaints disappeared.[1]  Also, the regulation was amended to read: "The Director, Office of Advocacy and Enterprise, will make determinations as to the merits of complaints under this subpart

---

[1] Apparently to no effect.  No procedures for complaints "not based on discrimination" have been identified by either party.

and as to corrective actions required to resolve the complaints." See 54 Fed. Reg. 31163 (emphasis added).  The commentary that accompanied publication of the final rule noted that this change was intended to "authorize" the Office of Advocacy and Enterprise to investigate and make determinations on complaints, and to clarify delegations of authority.  Id.

In 1999, after Congress passed § 741 and after the expiration of the period Congress had established for "eligible complaints," the regulations were amended again.  References to the Office of Advocacy and Enterprise were replaced with references to the Office of Civil Rights, and a provision that the "complain[ant] will be notified of the final determination on his or her complaint" was added.  See 64 Fed. Reg. 66709; 7 C.F.R. § 15d.4.  Also in 1999, the Department promulgated an internal "departmental regulation" specifying, apparently for the first time, the manner in which investigations would be conducted.  See Nondiscrimination in USDA-Conducted Programs and Activities, DR-4330-3 [*Garcia Dkt.* 150, Exhibit 15].

The evolution of these regulations sheds at least some light on the question whether they imposed a duty to investigate discrimination claims at the time that plaintiffs filed their eligible complaints, or instead only "authorized" such investigations and described the manner in which they would be carried out.  Although I find that to be an interesting

question,[2] the parties evidently do not.  The government may even have implicitly conceded that the regulations did impose a duty to investigate – focusing its argument instead on the assertion that its exercise of that duty is unreviewable for lack of manageable standards.  See Webster v. Doe, 486 U.S. 592 (1988); Heckler v. Cheney, 470 U.S. 821 (1985); Slyper v. Attorney General, 827 F.2d 821 (D.C. Cir. 1987).

In any event, both questions – whether the regulations required an investigation and whether investigation decisions are unreviewable – are beside the point, because even if plaintiffs have an APA claim under the 1999 regulations, that claim is barred by the existence of an adequate alternative remedy at law.

**B.  Adequate Alternative Remedy**

The APA provides for judicial review only where plaintiffs have "no other adequate remedy in a court."  5 U.S.C. § 704.  The definitive interpretation of this section comes from Bowen v. Massachusetts, 487 U.S. 879 (1988), where the Supreme Court cited Attorney General Clark's manual on the APA for the proposition that § 704 "does not provide additional judicial remedies in situations where the Congress has provided special

---

[2] I doubt that regulatory language describing which office "will" investigate complaints necessarily creates a judicially enforceable entitlement to an investigation, much less an entitlement to the "effective system for investigating and timely responding to complaints" that plaintiffs ask me to forge and oversee by injunction.  [78] at 29.

and adequate review procedures." Id. at 903.  In this case, it is clear that Congress has expressly addressed the exact injury of which plaintiffs complain, and provided a "special" and "adequate" remedy for their wrong.

The remedy that Congress fashioned to deal with years of neglect and malfeasance by the Department of Agriculture was "special" because it was an express response to the injuries of these very plaintiffs.  The "special" intent of Congress appears on the face of the Congressional Record, see 144 Cong. Rec. S11,433 (Sen. Robb), and is made self-evident by the definition of "eligible complaint" and the limitation of the extension remedy to those persons who actually filed complaints that had been neglected.

The special remedy Congress provided is also plainly "adequate."  Not only did it extend all applicable periods of limitation for those prejudiced by agency inaction, but it also allowed any eligible complainant to "seek a determination on the merits of the eligible complaint by the Department of Agriculture" – in other words, to take up her complaint again with the agency.  § 741(b).  The legislation required the agency to process such renewed complaints within 180 days if possible, required the agency to award appropriate relief, and required the agency to afford a hearing on the record before making a determination.  § 741(b)(1)-(3).  Congress also provided for de

novo review of any such determination in federal court. § 741(c).  In short, Congress's remedy allowed any member of the group plaintiffs seek to represent to renew her complaint with the agency and <u>to get her long-delayed investigation conducted</u> before going to court to vindicate her underlying claim of discrimination if the agency's determination was not entirely to her liking.  Congress did not require exhaustion of this newly-enacted procedure, however, and no plaintiff states that she resorted to it before joining this action.

Even in the absence of the "special and adequate" procedures Congress enacted to remedy plaintiffs' particular injuries, circuit precedent precludes an APA suit against an agency charged with overseeing and policing discrimination where a direct cause of action for discrimination exists.  The issue has been brought again and again to the D.C. Circuit, and it has repeatedly reaffirmed its en banc decision in <u>Council of and for the Blind v. Regan</u>, 709 F.2d 1521 (1983).

<u>Council of and for the Blind</u> denied APA review of the alleged failure of federal officers to terminate the federal funding of discriminating entities because direct suits for discrimination against state and local governments were an adequate remedy.  The court was troubled by a hypothetical world in which every instance of agency recalcitrance would require a court to enter an injunction or contempt order.  <u>See</u> <u>Council of</u>

and for the Blind, 709 F.2d at 1532.  It rejected the suggestion of amicus that it oversee "an investigation of the specific and ongoing practices of [the agency]," noting that such a role would be "more properly conducted by a Congressional subcommittee as part of its oversight function."  Id. at 1533.

Two considered opinions of then-Judge Ruth Bader Ginsburg endorsed and elaborated upon the reasoning of Council of and for the Blind.  In Coker v. Sullivan, 902 F.2d 84 (D.C. Cir. 1990), Judge Ginsburg noted the circuit's

> previously expressed hesitation to position this court as supreme supervisor of federal agency enforcement, a role more effectively performed by the Executive under congressional scrutiny.  See Council of and for the Blind, 709 F.2d at 1532.  As we explained in that case, the APA specifically provides that, if other remedies are adequate, federal courts will not oversee the overseer.

Id. at 89.  The basis for this rule is not only the language of the APA, but a concern about traversing unnecessarily into territory beyond the institutional competence of the courts – especially where traditional suits at law are available to remedy the core injury at issue.

In Coker, eligible families had sued to compel the Department of Health and Human Services to monitor states' compliance with the requirements of the Emergency Assistance (EA) program.  The court concluded that direct suits for assistance grants were an adequate remedy foreclosing oversight relief

against the federal government under the APA. The court noted that "the critical injury plaintiffs allege is the denial of EA to eligible families," Coker, 902 F.2d at 90 n.5, and reiterated that, under Council of and for the Blind, the APA bars "suits where a plaintiff's injury may be remedied in another action, even if that remedy would have no effect upon the challenged agency action." Id. (internal quotation omitted). The application of that holding to this case, where "the critical injury plaintiffs allege" is only a different kind of government benefit, is plain.

In Women's Equity Action League (WEAL) v. Cavazos, 906 F.2d 742 (D.C. Cir. 1990), Judge Ginsburg reiterated her Coker position. WEAL finally terminated twenty years of litigation in which the district court had come to serve "as nationwide overseer or pacer of procedures government agencies use to enforce civil rights prescriptions." Id. at 744. The court held that direct suits for discrimination against educational institutions constituted an adequate remedy precluding APA review of the enforcement and oversight work of the Department of Education. The court made clear that although the alternative of "[s]uits directly against the discriminating entities may be more arduous, and less effective in providing systemic relief," they were still "an adequate, even if imperfect, remedy." Id. at 751. See also Washington Legal Foundation v. Alexander, 984 F.2d 483

(D.C. Cir. 1993) (direct action under Title VI was adequate remedy precluding review under the APA even if the remedies under Title VI and the APA would be markedly different); Nat'l Wrestling Coaches Assoc. v. Dept. of Ed., 366 F.3d 930 (D.C. Cir. 2004) (direct action under Title IX was adequate remedy precluding review under the APA).

The rule that emerges from this unbroken line of circuit decisions is that, where a victim of discrimination can sue directly to remedy her injury, no action will lie under the APA for failure to adequately investigate, monitor, or police that discrimination.

Plaintiffs' attempt to distinguish that rule, and the Council of and for the Blind line of cases, is unpersuasive. It relies chiefly on McKenna v. Weinberger, 729 F.2d 783 (D.C. Cir. 1984). The plaintiff in McKenna claimed that a government agency discriminated against her by firing her and that it also failed to follow regulations related to her firing – for example, it failed to give notice two weeks in advance of termination. The court allowed her APA claim and her discrimination claim to go forward simultaneously, id. at 791, but it did not even cite to Council of and for the Blind, and it noted that McKenna's "claim of arbitrary treatment [was] entirely independent of her discrimination claim." McKenna, 729 F.2d at 791. The independence of the two claims distinguishes McKenna, and not the

Council of and for the Blind line of cases, from the case at bar, for whatever can be said of plaintiffs' APA claim here, it is certainly not "entirely independent" of their underlying claims of discrimination.

Plaintiffs also rely heavily on the fact that Council of and for the Blind and WEAL concerned discrimination by third parties rather than the government.  Yet this fact is legally irrelevant.  As the cases make clear, what matters is whether the injury can be remedied in a non-APA suit, not the identity of the target in that potential alternative action.  See, e.g., Washington Legal Foundation v. Alexander, 984 F.2d at 486; Coker v. Sullivan, 902 F.2d at 90 n.5.

    **C.  Non-Credit Benefits**

A small remaining issue between the parties is the viability of claims under the APA for discrimination in the administration of non-credit benefits.  Such claims cannot be brought under ECOA because they are not related to credit transactions, and defendant has not argued that these alleged acts of discrimination can be remedied under another federal law.  Section 704 of the APA thus does not appear to be implicated.  The Council of and for the Blind cases are also inapplicable because this APA action complains directly of discrimination, not of failure to investigate or police discrimination.  Yet even if an APA action could be maintained for these non-credit instances

of discrimination, there appears to be no mention in the third amended complaint of a plaintiff who actually suffered such discrimination.  See [78].  There is also no proper motion pending to amend the complaint to demonstrate that any named plaintiff has standing to litigate such a claim.  There is thus no reason to allow this additional APA cause of action to be maintained at this time.

                \*     \*     \*     \*     \*

An appropriate order accompanies this memorandum.


JAMES ROBERTSON
United States District Judge