IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROSEMARY LOVE, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> THOMAS VILSACK, SECRETARY ) <br> UNITED STATES DEPARTMENT OF ) <br> AGRICULTURE, ) <br> ) <br> Defendant. ) <br> ) | Case Number: 1:00CV02502 <br><br> Judge: Walton, J. |

## PLAINTIFFS' STATUS REPORT

Plaintiffs write to further advise the Court about the progress of settlement discussions in this case and the administrative claims process that will become available in the near future for female farmers. As the Court is aware, the Plaintiffs have engaged in good faith settlement discussions for well over a year, and have specifically focused with the government on the parameters of an administrative claims process to handle the claims of female farmers who are or could become plaintiffs in this case. Today the government publicly announced the upcoming claims process through a press release and a media conference call.

### A. Positive Changes

Plaintiffs' counsel most recently met with attorneys for the United States Department of Agriculture ("USDA") on February 22, 2011. Plaintiffs are pleased to report that USDA has agreed to implement several of the changes Plaintiffs have requested to the administrative claims process. These changes are reflected in the government's representations in its press release and media call, and in documents filed *in camera* by USDA following the parties' meeting on

February 22. Most notably, USDA will no longer require each claimant to file and then dismiss a complaint in court before she can file an administrative claim. Moreover, a claimant will not release her claims against the government unless she executes a Settlement Agreement *and* her Claims Package is accepted for consideration as timely and complete.[1]

Further, USDA has agreed to increase the potential damage award that a successful claimant may recover. This will be accomplished by offering two tiers of recovery. Under "Tier 2," claimants who are able to present documentation and satisfy a higher burden of proof may receive a flat $50,000 award, plus an additional payment to defray tax consequences of the award and possible debt relief. There is no limit on the total dollars that the government will award to successful claimants, in the aggregate, in Tier 2. Those claimants who cannot satisfy the higher burden of proof and provide the required documentation under Tier 2 are eligible for an award under "Tier 1" – *up to* $50,000, plus a tax payment and the possibility of debt relief. The total amount of dollars available to be awarded to Tier 1 claimants remains capped, and the amount each successful claimant receives may be reduced pro rata if the total recovery across the group ultimately exceeds the cap.

## B. Remaining Problems

Plaintiffs applaud the improvements made to the administrative claims process, including those set forth above. However, Plaintiffs believe that aspects of the process remain seriously flawed, as described below.

---

[1] Previously, the filing of a complaint and dismissal with prejudice would result in the claimant giving up any claim she had against the government before she could even learn whether an adjudicator would consider her claim.

**·Exceptionally Difficult Hurdles for Tier 2 Claimants and Constructive Applicants.**
USDA will require each Tier 2 claimant to present the adjudicator with copies of (a) her loan application and supporting documents or related correspondence from USDA; *and* (b) a copy of a written discrimination complaint filed with USDA. Requiring these documents as an absolute prerequisite to recovery is unfair, particularly when discrimination occurred up to 30 years ago, this tier already includes a higher burden of proof, and this evidentiary burden is arguably higher than would be imposed if claimants were to pursue their claims in court. USDA has not agreed to make its records available to claimants, and women should not be penalized for failing to keep copies of documents submitted to USDA decades ago. It does not appear that Native American and African-American claimants in the *Keepseagle* and *Pigford II* cases, respectively, will have to provide these particular documents in order to state cognizable claims, resulting in a greater burden on women claimants. The government will likely weed out the vast majority of women claimants through this onerous evidentiary burden for Tier 2.

Constructive applicants (those who were denied the ability to even apply for a farm loan due to discrimination) also continue to face an unreasonably high burden. These claimants must submit a written statement from a witness to the discriminatory incident, or a written complaint filed within one year of the incident. Claimants should not be penalized because they were alone when discrimination occurred, or because the witnesses are now deceased, cannot be located, or do not recall details from decades ago. It is also unreasonable to expect that each of these women filed a *written* complaint and kept a copy of it for many years. Any purported justification that these unduly burdensome requirements are necessary to prevent fraud is misplaced because the program already includes numerous other mechanisms for the detection

3

and eradication of fraudulent claims. Moreover, it is deeply troubling that this burden for women constructive applicants is significantly more difficult than that for Native American and African-American constructive applicant claimants in the *Keepseagle* and *Pigford II* settlements.

·**Inadequate Debt Relief.** The overall debt relief proposed by the government is capped for both women and Hispanic claimants at only $160 million. The government has previously stated that it anticipates sending claims packages to 400,000 potential claimants. If only half of those potential claimants file a successful claim and have eligible debt forgiven, each could receive only $800 in debt forgiveness (assuming the forgiveness was allocated equally). If even a quarter had eligible debt forgiven, each could receive $1,600 in forgiveness. These amounts are so insignificant as to be immaterial to many claimants. In addition, it is unclear whether claimants will have the opportunity to demonstrate that the discrimination they suffered impacted loans across multiple loan programs. Loan forgiveness is a primary concern for a huge number of potential claimants, and because debt forgiveness may be merely a bookkeeping entry denoting debt reduction, as opposed to an actual payment of monies, increasing the dollar value of debt forgiveness would seem to be a relatively low cost item to the Administration that could have a profound impact on making claimants whole for decades of abuse. The government's continued failure to commit adequate resources to make debt forgiveness a truly meaningful benefit is a serious flaw in the program.

·**Help in Navigating the Process.** Given the complexity of the program, the evidence needed to submit a successful claim under either Tier 1 or Tier 2, and the relative lack of sophistication of many claimants with legal processes, the program's limitations on legal counsel may severely disadvantage women claimants who will need assistance in filing their claims.

USDA refuses to provide attorneys' fees through the settlement and/or claims process, and aims to limit any attorneys' fees paid by an individual claimant to $1,000. While all parties wish to discourage unscrupulous lawyers and others from preying on claimants, any situation in which the individual claimants are paying counsel for assistance in asserting their claims is likely to result in potential claimants being taken advantage of and overpaying for assistance in submitting claims. Also, legal fees of $1,000 per claimant may grossly undervalue the work that should be done to counsel a client and prepare a filing. In addition to potentially undercompensating counsel, the USDA-imposed limit on fees paid by an individual to her attorney is unenforceable.

Moreover, members of other minority groups are provided counsel free of charge in the *Pigford* and *Keepseagle* claims processes. This will not only benefit the claimants, and preclude their being taken advantage of; it will also make the claims process run more smoothly because both USDA and the claims administrator will be able to iron out problems with a single set of claimants' counsel, who will in turn have understanding of and experience with the claims process that is established. Female claimants should be allowed these same benefits.

·**Court Oversight**. Some level of Court oversight should be built into the claims process. The claims process will include a battery of "fraud prevention" measures, all of which are aimed at curbing fraudulent and other bad behavior by claimants. There is no similar avenue by which claimants may address potential bad behavior or programmatic inequities by USDA and the administrator and/or adjudicator during the claims process. While Plaintiffs do expect that USDA will proceed in good faith, many claimants are inherently suspicious of a process run

entirely by the very entity that discriminated against them. Even a limited amount of Court oversight would lend credibility to the process.

## CONCLUSION

Plaintiffs and Defendant continue to communicate regarding the administrative claims process and potential settlement of this case. Several positive changes have occurred as a result of the parties' efforts. However, Plaintiffs wished to alert the Court to some remaining problems, and those presented here do not constitute an exhaustive list.

Plaintiffs may further request the assistance of the Court in the future, and may also move for attorneys' fees for past work at an appropriate time.

Dated: February 25, 2011

Respectfully submitted,

\_\_\_\_\_/s/ Barbara S. Wahl\_\_\_\_\_
Marc L. Fleischaker #004333
Barbara S. Wahl #297978
Kristine J. Dunne #47148
ARENT FOX LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5339.
Telephone:  (202) 857-6000
Facsimile:  (202) 857-6395

Roderic V.O. Boggs
Susan E. Huhta # 453478
WASHINGTON LAWYERS
  COMMITTEE FOR CIVIL RIGHTS
  AND URBAN AFFAIRS
11 Dupont Circle, N.W. - Suite 400
Washington, D.C.   20036
(202) 319-1000
Fax (202) 319-1010

Alexander John Pires, Jr. # 185009
CONLON FRANTZ PHELAN & PIRES
1818 N Street, N.W. - Suite 700
Washington, D.C.  20036
(202) 331-7050
Fax (202) 331-9306

Philip L. Fraas # 211219
3050 K Street, N.W. - Suite 400
Washington, D.C.   20007-5108
(202) 342-8864
Fax (202) 342-8451

*Counsel for Plaintiffs*

7