**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
ROSEMARY LOVE, et al.,         )
                                        )
          Plaintiffs,         )
                                        )
      v.                        )      Civil Action No. 00-2502 (RBW)
                                        )
TOM J. VILSACK,          )
Secretary, United States Department of  )
Agriculture,         )
                                        )
         Defendant.         )
_____)

## MEMORANDUM OPINION

      The plaintiffs in this civil action are female farmers who allege that the United States Department of Agriculture ("USDA") discriminated against them on the basis of gender by denying them "equal and fair access to farm loans and loan servicing, and of consideration of their administrative complaints." Fourth Amended and Supplemental Complaint ("Am. Compl.") at 3. Most relevant for present purposes, the plaintiffs also claim that the "USDA offered and is implementing voluntary administrative claims programs to adjudicate the claims of members of other minority groups who suffered similar discrimination," but "has arbitrarily refused to offer equivalent terms to women, further depriving them of equal protection and due process." Id. Currently before the Court is the USDA's motion to dismiss Counts III through VI of the fourth amended complaint. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that the USDA's motion must be granted.[2]

___

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: the Memorandum in Support of Defendant's Motion to Dismiss Counts III through VI of Plaintiffs' Fourth Amended and Supplemental Complaint ("Def.'s Mem."); the Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss Counts III through VI of Plaintiffs' Fourth Amended and Supplemental Complaint, and in (continued . . . )

## I. BACKGROUND

Between 1997 and 2000, African-American, Native American, Hispanic, and female farmers filed four similar class action lawsuits alleging that "the USDA routinely discriminated in its farm benefit programs on the basis of race, ethnicity, and gender, and failed to investigate the claims of farmers who filed discrimination complaints with the agency." Am. Compl. ¶ 75; see Pigford v. Glickman, Nos. 97-1978, 98-1693 (D.D.C.) ("Pigford I") (African-American farmers); Keepseagle v. Vilsack, No. 99-3119 (D.D.C.) (Native American farmers); Garcia v. Vilsack, No. 00-2445 (D.D.C.) (Hispanic farmers); Love v. Vilsack, No. 00-02502 (D.D.C.) (female farmers). A brief overview of those cases is necessary to understand the claims that are the subject of the USDA's motion to dismiss.

On October 9, 1998, Judge Paul L. Friedman of this Court certified Pigford I as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) for purposes of liability.[3] Pigford v. Glickman, 182 F.R.D. 341, 352 (D.D.C. 1998). Judge Friedman later vacated his original class certification order on January 5, 1999, and certified a new class pursuant to Rule 23(b)(3).[4] Pigford v. Glickman, 185 F.R.D. 82, 92 (D.D.C. 1999). Following the Court's class certification rulings, the parties in Pigford I negotiated a class-wide settlement, which Judge Friedman

---

( . . . continued)
Support of Plaintiffs' Motion for Partial Summary Judgment as to Counts III through VI ("Pls.' Opp'n"); and the Reply Memorandum in Support of USDA's Motion to Dismiss Counts III-VI of Plaintiffs' Fourth Amended and Supplemental Complaint ("Def.'s Reply").

[2] The Court is contemporaneously issuing on this date a Memorandum Opinion in Cantu v. United States, No. 11-541 (D.D.C.), which addresses claims of Hispanic farmers similar to those asserted in this case.

[3] Rule 23(b)(2) permits class certification where, among other things, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

[4] Rule 23(b)(3) permits class certification where, among other things, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

approved in a consent decree issued on April 14, 1999. Id. at 113. The Pigford I consent decree "did not provide for the automatic payment of damages to any plaintiff"; rather, "it established a non-judicial mechanism," i.e., an administrative claims process, "by which each class member would have an opportunity to demonstrate that he or she had been the victim of past discrimination by the USDA and therefore was entitled to compensatory damages." In re Black Farmers Discrim. Litig., 856 F. Supp. 2d 1, 9 (D.D.C. 2011).

The Pigford I consent decree imposed a deadline for African-American farmers to submit their claims for administrative adjudication, id. at 10, and many farmers tried, unsuccessfully, to file claim packages after the deadline expired, id. at 11. To address this problem, "Congress resurrected the claims of those who had unsuccessfully petitioned the Arbitrator for permission to submit late claim packages" by enacting "the Food, Conservation, and Energy Act of 2008." Id. This Act provides that "[a]ny Pigford claimant who has not previously obtained a determination on the merits of a Pigford claim may, in a civil action brought in the United States District Court for the District of Columbia, obtain that determination." Pub. L. 110–234, § 14012(b), 122 Stat. 923, 1448 (2008). After the Act became effective, thousands of African-American farmers filed suit in this Court. In re Black Farmers, 856 F. Supp. 2d at 13. Those cases are collectively known as Pigford II. Id. The parties in Pigford II reached a class-wide settlement agreement on February 18, 2010, id., which Judge Friedman approved, id. at 42. The settlement agreement largely maintained the administrative claims process utilized in Pigford I, with some modifications. Id. at 22.

Keepseagle proceeded much like Pigford I, albeit at a different pace. Judge Emmet G. Sullivan of this Court certified that case as a class action pursuant to Rule 23(b)(2). See Keepseagle v. Veneman, No. 99-03119, 2001 WL 34676944, at *1 (D.D.C. Dec. 12, 2001).

Nine years later, in 2010, the parties reached a class-wide settlement agreement, which Judge Sullivan approved. See Keepseagle v. Veneman, No. 99-03119, ECF No. 577 (D.D.C. Nov. 1, 2010) (order granting preliminary approval of settlement). The settlement agreement in Keepseagle established an administrative claims process for Native American farmers that was similar, though not identical, to the process established in Pigford I. See Am. Compl. ¶ 87; Def.'s Mem. at 4.

This case and Garcia followed a different path. Judge James Robertson, a former member of this Court, denied the plaintiffs' motions for class certification in both actions.[5] See Love v. Veneman, 224 F.R.D. 240 (D.D.C. 2004), aff'd in part, remanded in part sub nom. Love v. Johanns, 439 F.3d 723 (D.C. Cir. 2006); Garcia v. Veneman, 224 F.R.D. 8 (D.D.C. 2004), aff'd and remanded sub nom. Garcia v. Johanns, 444 F.3d 625 (D.C. Cir. 2006). And the USDA has not offered to settle the cases on a class basis pursuant to Rule 23, as it had in the Pigford and Keepseagle cases. See Am. Compl. ¶¶ 102-104. The USDA has, however, developed a different administrative claims process for female and Hispanic farmers. See id. ¶ 88; Cantu v. United States, No. 11-541, ECF No. 46 ¶ 51 (D.D.C.).

On July 13, 2012, the plaintiffs, with leave of the Court, filed their fourth amended complaint. Counts III through VI of the fourth amended complaint challenge the administrative claims process established for female farmers on the ground that it "is significantly inferior to the administrative programs offered to African-American and Native American farmers who suffered similar discrimination and filed virtually identical complaints." Am. Compl. ¶¶ 88, 123-139. Claiming that this disparity is the result of gender discrimination, the plaintiffs assert that the USDA's administrative claims process violates the equal protection and due process

---

[5] Upon Judge Robertson's retirement from the Court, this case and Garcia were reassigned to the undersigned member of the Court.

guarantees of the Fifth Amendment to the United States Constitution, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2) (2006).  See id. ¶¶ 123-139.

The USDA has now moved to dismiss Counts III through VI of the fourth amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[6]

## II.  STANDARD OF REVIEW

Rule 12(b)(1) allows a party to move to dismiss "for lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  When a defendant moves to dismiss under Rule 12(b)(1), "the plaintiff[] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction."  Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d 172, 176 (D.D.C. 2004); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [a] plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."  Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citing Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992)).

## III.  ANALYSIS

In moving to dismiss for lack of subject-matter jurisdiction, the USDA argues, among other things, that the plaintiffs lack standing to challenge the administrative claims process. Def.'s Mem. at 10.  For the reasons that follow, the Court agrees.

---

[6] Because the Court grants the defendants' motion on jurisdictional grounds under Rule 12(b)(1), it does not consider the defendants' arguments urging dismissal pursuant to Rule 12(b)(6).

"Because Article III limits the constitutional role of the federal judiciary to resolving cases and controversies, a showing of standing 'is an essential and unchanging' predicate to any exercise of [federal] jurisdiction." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "'The irreducible constitutional minimum of standing contains three elements: (1) injury-in-fact, (2) causation, and (3) redressability.'" Nat'l Ass'n of Home Builders v. EPA, 667 F.3d 6, 11 (D.C. Cir. 2011) (citation omitted). "'Thus, to establish standing, a litigant must demonstrate a personal injury fairly traceable to the [opposing party's] allegedly unlawful conduct [that is] likely to be redressed by the requested relief.'" Id. (citation omitted). "The absence of any one of these three elements defeats standing." Newdow v. Roberts, 603 F.3d 1002, 1010 (D.C. Cir. 2010).

The injury asserted by the plaintiffs is that the administrative claims process established for female farmers is "more onerous" than the "claims programs offered to similarly situated African-American and Native American farmers," and thus the plaintiffs "are unable to compete for a benefit offered by the government on equal footing with other groups." Pls.' Opp'n at 16. As redress for this alleged injury, the plaintiffs ask the Court to

> issue an Order mandating that [the] USDA implement a voluntary administrative claims program for women farmers with material terms that are equally beneficial to those offered to African-American and Native American farmers with similar claims of discrimination, including but not limited to: (a) not imposing on women farmers a higher standard than required of other minority farmers in order to be granted an award; (b) not imposing limitations on women farmers' use of legal counsel; (c) providing free legal advice and counsel to claimants as part of the program; and (d) not requiring women farmers to broadly release all credit-related discrimination claims against [the] USDA before notice of receipt of their claim and confirmation that their claim will be considered on the merits.

Am. Compl. at 46 (emphasis in original). The plaintiffs also seek a declaratory judgment that the USDA's administrative claims process is unlawful. Id. at 44.

The parties' standing arguments focus on whether the plaintiffs have satisfied the first element of Article III standing—injury-in-fact. According to the USDA, the plaintiffs "have suffered no harm whatsoever as a result of" the administrative claims process "because their participation in it is strictly optional, not mandatory." Def.'s Mem. at 11 (emphasis omitted). The plaintiffs characterize the USDA's position as "meritless," and contend that "courts regularly entertain challenges to government programs and benefits in which individual participation is 'voluntary.'" Pls.' Opp'n at 17.

The Court need not address these arguments because, even assuming the plaintiffs have established a sufficient injury-in-fact, they have failed on the final element of the standing test—redressability.[7] To satisfy this element, a plaintiff must show in the first instance that the court is capable of granting the relief sought. See Newdow, 603 F.3d at 1010-11 (plaintiffs could not establish redressability because "[i]t [was] impossible for th[e] court to grant [their requested] relief"); Swan v. Clinton, 100 F.3d 973, 976 (D.C. Cir. 1996) (indicating that the "'redressability' element of standing" entails the question of "whether a federal court has the power to grant [the plaintiff's requested] relief"); Lozansky v. Obama, 841 F. Supp. 2d 124, 132 (D.D.C. 2012) ("Plaintiffs . . . lack standing because the Court cannot issue the requested writ of mandamus, and thus cannot redress the [claimed] injury."). Here, the primary relief sought by the plaintiffs is "an injunction compelling [the] USDA to offer women farmers a program comparable to those offered to African-American and Native American farmers." Pls.' Opp'n at 17; see Am. Compl. at 46. But it is settled law that "[a] judge may not coerce a party into settling." Gevas v. Ghosh, 566 F.3d 717, 719 (7th Cir. 2009); accord In re NLO, Inc., 5 F.3d

---

[7] Because "[t]he federal courts are under an independent obligation to examine their own jurisdiction," and because "standing 'is perhaps the most important of [the jurisdictional] doctrines,'" FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)), the Court is not limited to the arguments raised in the parties' briefs in evaluating whether the plaintiffs have Article III standing.

154, 157 (6th Cir. 1993); Newton v. A.C. & S., Inc., 918 F.2d 1121, 1128 (3d Cir. 1990); G. Heileman Brewing Co., Inc. v. Joseph Oat Corp., 871 F.2d 648, 653 (7th Cir. 1989) (en banc); In re Ashcroft, 888 F.2d 546, 547 (8th Cir. 1989) (per curiam); Kothe v. Smith, 771 F.2d 667, 669 (2d Cir. 1985); Del Rio v. Northern Blower Co., 574 F.2d 23, 26 (1st Cir. 1978); see also MacLeod v. D.C. Transit Sys., Inc., 283 F.2d 194, 195 n.1 (D.C. Cir. 1960) (indicating that a trial judge may "convey[] his views about [a] settlement [offer] to the litigants' counsel . . . who [are] free to accept or reject the [j]udge's views," so long as the judge does not "in any way [bring] 'pressure' on the parties" to settle). Coercing parties to settle is not only beyond a federal court's authority, but also is prohibited by the ethical rules that govern the conduct of federal judges. See Code of Conduct for United States Judges Cannon 3A(4) (Commentary) ("A judge may encourage and seek to facilitate settlement but should not act in a manner that coerces any party into surrendering the right to have the controversy resolved by the courts."). And in cases, such as this one, "in which the United States is interested," only designated government officials and agencies are "authorized to settle litigation." United States v. LaCroix, 166 F.3d 921, 923 (7th Cir. 1999). Issuing the plaintiffs' requested injunction compelling the USDA to make a specific settlement offer to the plaintiffs would improperly "transfer the litigant's authority to th[is] judge," in violation of the Court's duty to "respect th[e] decision[s] . . . made by those in the Executive Branch of government entitled to manage litigation." Id. Because this Court is powerless to compel the USDA to settle with the plaintiffs in any particular manner or on any particular terms, it cannot grant the injunctive relief requested by the plaintiffs.

   The plaintiffs also appear to seek a declaratory judgment that the USDA's administrative claims process is unconstitutional and violative of the APA. See Am. Compl. at 44. While the Court has authority to grant such relief, see Declaratory Judgment Act, 28 U.S.C. § 2201 (2006);

APA, 5 U.S.C. § 706(2), a question remains as to whether granting this relief would actually redress the plaintiffs' alleged injury, see Newdow, 603 F.3d at 1011 (the plaintiffs' "second redressability problem is that declaratory and injunctive relief against the defendants . . . would not prevent the claimed injury"). As previously noted, the plaintiffs' claimed injury is the USDA's denial of equal treatment to the plaintiffs in settling their discrimination claims, as compared to the settlement offers the USDA provided to similarly-situated African-American and Native American farmers. Pls.' Opp'n at 16. The District of Columbia Circuit has recognized that there are "two remedial alternatives" to redress an equal protection injury such as the one asserted in this case: (1) wholesale invalidation of the government action, or (2) extension of the government benefit to those aggrieved by the exclusion. See Jacobs v. Barr, 959 F.2d 313, 317 (D.C. Cir. 1992) (quoting Heckler v. Matthews, 465 U.S. 728, 738-39 (1984)). Neither type of relief would be afforded to the plaintiffs by a ruling holding the USDA's administrative claims process in this case unlawful and setting it aside. Indeed, such a ruling would not (and could not) invalidate the settlement offers provided by the USDA to African-American and Native American farmers, nor would it (or could it) compel the USDA, for the reasons set forth above, to make an equivalent settlement offer to the plaintiffs. In other words, it would not provide either of the two forms of relief that would redress the plaintiffs' alleged equal protection injury. See id. The ruling would merely place the plaintiffs in the position they were in prior to the settlement offer made by the USDA. Thus, the plaintiffs' requested declaratory relief would not redress the injury they claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiffs have failed to satisfy the redressability element of Article III standing with respect to their claims challenging the USDA's

administrative claims process.  Accordingly, the Court grants the USDA's motion to dismiss Counts III through VI of the fourth amended complaint for lack of subject-matter jurisdiction.

**SO ORDERED** this 11th day of December, 2012.[8]

REGGIE B. WALTON<br>United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.